PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
JOSEPH McEVOY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH McEVOY<br><br>    Plaintiff,<br><br>v.<br><br><br>ANGELO PRONGOS dba MAYFLOWER MARKET,<br><br>    Defendant. | CASE NO.<br><u>Civil Rights</u><br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:<br><br>1.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)<br><br>2.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)<br><br>3.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff JOSEPH McEVOY complains of Defendant ANGELO PRONGOS dba

MAYFLOWER MARKET, and alleges as follows:

1.      **INTRODUCTION:**  Defendant told disabled Plaintiff Joseph McEvoy to never

return to their store and threatened his life and well-being if he did not remove himself and his

service dog from their store.  On March 4, 2022, Plaintiff, a person with a disability, entered the

Mayflower Market located at 2498 Fillmore Street, San Francisco, California, with his service

dog Mona to purchase a snack.  As is Plaintiff's custom and right, Mona accompanied him into

the store while he found the items he wanted to purchase. Plaintiff placed his intended purchases

on the sales counter, but the cashier took the items and refused to sell him anything until he got

1

his dog out of the store. Plaintiff informed the cashier that Mona is a service dog, but the cashier still refused to sell him the items.  Plaintiff asked to speak with the manager.  The cashier pointed to the manager who was standing near the cash register.  The manager yelled at Plaintiff that he could not have his dog in the store.  When Plaintiff started to explain his rights to use a service dog to the manager, the manager yelled at the cashier to sell Plaintiff the items.  Then the manager continued to yell at Plaintiff that he could never come back in the store and threatened kill him if he returned. Plaintiff made his purchases got out of the store as quickly as possible.  He was afraid for his and Mona's safety.

2.     Plaintiff works at a construction site near the Mayflower Market and likes the selection of healthy food that the store has in stock.  He would like to return to patronize the market, but he cannot do so until the policies of the market are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him for refusing to allow him to enter the market because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Mayflower Market.

3.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

4.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

5.     **INTRADISTRICT:**  This case should be assigned to the San Francisco intradistrict because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

6.     **PARTIES:**  Plaintiff Joseph McEvoy is a "qualified" disabled person.  He suffers from post-traumatic stress disorder (PTSD) and anxiety.  Plaintiff relies upon his service dog, an

2

American Staffordshire Terroir named "Mona," to assist him with certain tasks including pawing at Plaintiff when he is exhibiting symptoms of anxiety, leading Plaintiff to an exit during stressful situations, providing deep pressure therapy to ground Plaintiff, wake up Plaintiff if he is having a nightmare, positioning and blocking skills to make space for Plaintiff when he is surrounded by others, grounding Plaintiff during a flashback, guiding Plaintiff to a safe space during a dissociative episode, initiating tactile intervention when Plaintiff is experiencing sensory overload, and perimeter searched of public accommodations and home to alleviate Plaintiff's symptoms of hypervigilance.  Mona was individually trained by Plaintiff to be service dog based on his prior experience of going through professional training with his previous service dog. Plaintiff continues to reinforce the training with Mona daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

7.      Defendant ANGELO PRONGOS dba MAYFLOWER MARKET, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business, property and building located at 2498 Fillmore Street, San Francisco, California, known as the Mayflower Market.

8.      Mayflower Market is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

9.      **FACTUAL STATEMENT:**  Plaintiff Joseph McEvoy has been working with his service dog Mona for eight years.  Mona is an American Staffordshire Terroir who was individually trained by Plaintiff to be a service dog.  Plaintiff has also trained and continues to train Mona to serve his specific needs throughout their relationship.  Mona is specifically trained to assist Plaintiff with controlling his symptoms of PTSD as described above.  Many of Mona's tasks require her to be under voice control rather than on a leash, such as perimeter searching, so Plaintiff has trained Mona to be under voice control at all times when not using a leash. Plaintiff's PTSD makes it so he has difficulty entering unfamiliar spaces, so Plaintiff has trained

Mona to check for threats before he enters a public place.  Mona must be off leash to perform this task.

10.     Mona is a working dog; she is not a pet.  Plaintiff and Mona have trained extensively together, and they supplement that training daily.  Plaintiff takes Mona everywhere with him in public.  It is important they stay together at all times because (a) Mona provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  Where Plaintiff goes, Mona goes.  Mona even accompanies Plaintiff to his construction site jobs.  When she is at a construction site, Mona wears an orange vest for visibility, and when she is off the job, she wears a vest identifying her as a service dog.  Below are two photographs of Mona. One photograph is of her in the orange vest as she looked on the date of the incident at the Mayflower Market, and the other is of her in her service dog vest:



11.     On March 4, 2022, Plaintiff was working at a construction jobsite in Pacific Heights.  His service dog Mona accompanies him on the jobsite to assist in her necessary service dog tasks.  During a break from work, Plaintiff and Mona went to the Mayflower Market to buy a snack.

4

12.     Pursuant to their training, Mona was under voice control during their visit to the Mayflower Market.  She cannot be on a leash when she performs her tasks.  Mona and Plaintiff entered the Mayflower Market, and Mona performed a perimeter search to ensure that it was a safe place for Plaintiff to enter.  One of Plaintiff's symptoms stemming from his PTSD is hypervigilance, and thus having Mona investigate the market for threats is necessary for him to feel safe to enter the space.

13.     After Mona indicated to Plaintiff that it was safe, Plaintiff and Mona entered the Mayflower Market.  Plaintiff picked out the items he wanted to purchase and then headed to the cashier.  He placed his items on the service counter to check out.  The cashier told Plaintiff that he could not have his dog in the Market especially without a leash.  Plaintiff explained that Mona is a service dog and that she is unable to perform the tasks she is trained to perform when she is on a leash.  The cashier then asked Plaintiff to produce proof that Mona is a service dog.  Plaintiff explained that he is not required to carry proof that Mona is a service dog.  The cashier then took Plaintiff's items off of the sales counter and told him to leave because she would not sell him anything with his dog in the store.

14.     Plaintiff then asked to speak to the manager.  The cashier pointed to a man standing next to her behind the counter.  The manager then proceeded to yell at Plaintiff to get out of his store.  He swore at Plaintiff and threatened him if he did not leave.  He also yelled at Plaintiff that his dog needed to be on a leash.  Plaintiff continued to explain that they were violating his rights under the ADA to be accompanied by his service dog, and he began to take a video of the incident.  The manager then told the cashier to just sell him the items and then threatened Plaintiff's life if he ever returned to the Market.

15.     Plaintiff paid for his items and left the Market immediately.  He was very shaken and upset by the incident.  He was very concerned about the threats that the manager had made towards him, so he called the Department of Justice and the San Francisco Human Rights Commission to report the incident.

16.     On information and belief, the San Francisco Human Rights Commission contacted Defendants regarding the incident because on March 17, 2022, the cashier of the

Mayflower Market approached Plaintiff while he was working at his jobsite in Pacific Heights to discuss the incident.  The cashier stopped her car in the middle of the street, blocking traffic, and yelled at Plaintiff, "aren't you the guy with the dog?  I heard you want an apology."  Plaintiff was embarrassed at being approached like this on his jobsite.  It was also very concerning to him that Defendant knew where he worked considering the threats Defendant had made against him while he was at the Market.  Plaintiff told Defendant's employee that an apology was not enough after the treatment he had endured.  Defendant's employee then informed Plaintiff that she "had spoken to her attorneys" and left.

17.     The second incident coupled with the previous threats by Defendant's manager prompted Plaintiff to call the police to report the harassment.  The San Francisco Police Department sent an officer to take a statement from Plaintiff, and the officer also told Plaintiff that he would speak to Defendant's employees and warn them to stay away from Plaintiff.  However, Plaintiff is still concerned about Defendant's threats towards him.

18.     Plaintiff wishes to return to the Mayflower Markey, but only *after* Defendant's have implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the Market until these policies and training are in place.

### FIRST CAUSE OF ACTION:
### DAMAGES AND INJUNCTIVE RELIEF
### FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION
### (Civil Code §§ 54 *et seq.*)

19.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 18 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

20.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

21.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is

6

invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

22. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

23. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

24. Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

25. Mayflower Market is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owners, operators, lessors or lessees of the public accommodation.

26. Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of his legally protected use of his service

dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities. Plaintiff is unable to return to the Mayflower Market until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since March 4, 2022, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

27.    **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

28.    Plaintiff wishes to return to patronize the Mayflower Market but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Mayflower Market and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

29.    The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.  As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

30.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

31.     **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Mayflower Market and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

32.     Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

33.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

34.     Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on his deterrence from returning to the Mayflower Market.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

35.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 34 of this Complaint and incorporates them herein as if separately re-pleaded.

36.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

37.     California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

38.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

10

Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

39.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

40.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory damages to Plaintiff, according to proof.

41.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

42.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

11

1    WHEREFORE, Plaintiff prays for relief as hereinafter stated.

2                    **THIRD CAUSE OF ACTION:**
3    **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
                    **(42 USC §§ 12101 *et seq.*)**

4        43.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

5    the factual allegations contained in Paragraphs 1 through 42, above, and incorporates them herein

6    by reference as if separately repled hereafter.

7        44.    In 1990 Congress passed the Americans with Disabilities Act after finding that

8    laws were needed to more fully protect "some 43 million Americans with one or more physical or

9    mental disabilities; that historically society has tended to isolate and segregate individuals with

10   disabilities;" that "such forms of discrimination against individuals with disabilities continue to

11   be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals

12   with disabilities are to assure equality of opportunity, full participation, independent living and

13   economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and

14   unnecessary discrimination and prejudice denies people with disabilities the opportunity to

15   compete on an equal basis and to pursue those opportunities for which our free society is

16   justifiably famous." 42 U.S.C. § 12101(a).

17       45.    The ADA provides, "No individual shall be discriminated against on the basis of

18   disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

19   or accommodations of any place of public accommodation by any person who owns, leases, or

20   leases to, or operates a place of public accommodation." 42 USC § 12182.

21       46.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation

22   Act and in the Americans with Disabilities Act of 1990.

23       47.    The Mayflower Market is a public accommodation within the meaning of Title III

24   of the ADA.  42 U.S.C. § 12181(7)(E).

25       48.    The ADA prohibits, among other types of discrimination, "failure to make

26   reasonable modifications in policies, practices or procedures when such modifications are

27   necessary to afford such goods, services, facilities, privileges, advantages or accommodations to

28   individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

49.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

50.     Defendant has a policy and practice of denying access to patrons with service animals.

51.     On information and belief, as of the date of Plaintiff's most recent visit to the Mayflower Market on or about March 4, 2022, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

52.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

53.     As part of the ADA, Congress passed "Title III - Public Accommodations and

13

Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "grocery store." 42 USC § 12181(7)(E).

54.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

55.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

56.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

57.     Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Mayflower Market and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

58.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

[i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where

appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

59.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Mayflower Market, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Joseph McEvoy prays for judgment and the following specific relief against Defendant:

1.     An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of the

1    Mayflower Market;

2    c.   That the Court issue preliminary and permanent injunction directing Defendant as

3         current owners, operators, lessors, and/or lessees and/or their agents of the subject

4         property and premises to modify the above described property, premises, policies

5         and related policies and practices to provide full and equal access to all persons,

6         including persons with disabilities; and issue a preliminary and permanent

7         injunction pursuant to ADA section 12188(a) and state law directing Defendant to

8         provide facilities usable by Plaintiff and similarly situated persons with

9         disabilities, and which provide full and equal access, as required by law, and to

10        maintain such accessible facilities once they are provided and to train Defendant's

11        employees and agents in how to recognize disabled persons and accommodate

12        their rights and needs;

13   d.   An order retaining jurisdiction of this case until Defendant have fully complied

14        with the orders of this Court, and there is a reasonable assurance that Defendant

15        will continue to comply in the future absent continuing jurisdiction;

16   2.   An award to Plaintiff of statutory, actual, general, treble, and punitive damages in

17   amounts within the jurisdiction of the Court, all according to proof;

18   3.   An award of civil penalty as against Defendant under California Penal Code §

19   365.5(c);

20   4.   An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

21   Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise

22   permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

23   5.   An award of prejudgment interest pursuant to Civil Code § 3291;

24   6.   Interest on monetary awards as permitted by law; and

25   7.   Grant such other and further relief as this Court may deem just and proper.

26   //

27   //

28   //

17

Date: April 8, 2022                                REIN & CLEFTON

                                                   _____/s/ Aaron M. Clefton_____
                                                   By AARON M. CLEFTON, Esq.
                                                   Attorneys for Plaintiff
                                                   JOSEPH McEVOY

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: April 8, 2022                                REIN & CLEFTON

                                                   _____/s/ Aaron M. Clefton_____
                                                   By AARON M. CLEFTON, Esq.
                                                   Attorneys for Plaintiff
                                                   JOSEPH McEVOY