PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq. (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:     510/832-5001
Facsimile:     510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
JOSEPH McEVOY

Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
500 Newport Center Drive Suite 610
Newport Beach, CA 92660
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorneys for Defendant
ANGELO PRONGOS dba MAYFLOWER MARKET

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH McEVOY,<br><br>        Plaintiff,<br><br>v.<br><br>ANGELO PRONGOS dba<br>MAYFLOWER MARKET,<br><br>        Defendant. | Case No. 4:22-cv-02228-DMR<br>Civil Rights<br><br>**COURT ENFORCEABLE SETTLEMENT AGREEMENT AND [PROPOSED] ORDER FOR INJUNCTIVE RELIEF**<br><br>Action Filed: April 8, 2022 |

1. Plaintiff JOSEPH McEVOY filed a Complaint in this action on April 8, 2022, to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California civil rights laws and to obtain recovery of damages for discriminatory experiences, denial of access, and denial of civil rights against Defendant ANGELO PRONGOS dba MAYFLOWER MARKET. Plaintiff has alleged that Defendant violated Title III of the ADA; Sections 51, 52, 54, 54.1, and 54.3 of the California Civil Code; and Health and Safety Code §§ 19953 *et. seq.* by failing to provide full and equal access to patrons and their service dogs at the Mayflower Market located at 2498 Fillmore Street, San Francisco, California.

2. In order to avoid the costs, expense, and uncertainty of protracted litigation, Plaintiff JOSEPH McEVOY and Defendant ANGELO PRONGOS dba MAYFLOWER MARKET (together sometimes the "Signing Parties") agree to entry of this Court Enforceable Settlement Agreement and Order to resolve all claims regarding injunctive relief raised in the Complaint without the need for protracted litigation. The parties have additionally reached a confidential financial settlement that will be documented and executed separately. Accordingly, the Signing Parties agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for relief.

**JURISDICTION:**

3. The Signing Parties to this Court Enforceable Settlement Agreement and Order agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California Civil Code sections 51, 54, and 54.1.

WHEREFORE, the Signing Parties to this Court Enforceable Settlement Agreement hereby agree and stipulate to the Court's entry of this Court Enforceable Settlement Agreement and Order, which provide as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

4. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendant for injunctive relief that have arisen out of the subject Complaint.

5. The Signing Parties agree and stipulate that any policies adopted shall be carried out in compliance with the standards and specifications for disabled access federal and state accessibility, unless other standards are specifically agreed to in this Court Enforceable Settlement Agreement and Order.

6. Defendant shall adopt the Service Animal Policy attached as Exhibit A and train their staff within 30 days from the date of the filing of this document.

7. Defendant agrees to allow Plaintiff back into the Mayflower Market with his service dog.

    a. **Timing**: All policy measures will be implemented within 30 days of filing of this document. In the event that unforeseen difficulties prevent Defendant from completing any of the agreed-upon injunctive relief, Defendant or its counsel will notify Plaintiff's counsel in writing within seven (7) days of discovering the delay. Plaintiff will have thirty (30) days to investigate and meet and confer with Defendant, and to approve the delay by stipulation or otherwise respond to Defendant's notice. If the Signing Parties cannot reach agreement regarding the delay within that time period, Plaintiff may seek enforcement by the Court.

    b. Defendant or defense counsel will notify Plaintiff's counsel when the policy is implemented and the training is completed, and, whether completed or not, will provide a status report to Plaintiff's counsel no later than December 1, 2022.

    c. If Defendant fails to provide injunctive relief on the agreed upon timetable and/or fail to provide timely written status notification, and

Plaintiff file a motion with the Court to obtain compliance with these terms, Plaintiff reserves the right to seek additional attorney's fees for any compliance work necessitated by Defendant's failure to keep this agreement.  If the Signing Parties disagree, the Signing Parties agree to participate in a Magistrate Judge-conducted Settlement Conference for the purposes of resolving the disputed fees.  If the Settlement Conference fails to resolve the fee dispute, Plaintiff may seek relief via motion for an order directing the Defendant to pay Plaintiff's counsel reasonably incurred fees.

**DAMAGES, ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS:**

The Parties have resolve the monetary aspects of this case by separate confidential settlement agreement.

**ENTIRE COURT ENFORCEABLE SETTLEMENT AGREEMENT AND ORDER:**

8. This Court Enforceable Settlement Agreement and Order constitute the entire agreement between the Signing Parties on the matters of injunctive relief, and no other statement, promise, or agreement, either written or oral, made by any of the Signing Parties or agents of any of the Signing Parties that is not contained in this written Court Enforceable Settlement Agreement and Order, shall be enforceable regarding the matters of injunctive relief described herein.

**COURT ENFORCEABLE SETTLEMENT AGREEMENT AND ORDER BINDING ON SIGNING PARTIES:**

9. This Court Enforceable Settlement Agreement and Order shall be binding on the Parties. .

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542:**

1     10.    Each of the Signing Parties to this Court Enforceable Settlement Agreement and Order understands and agrees that there is a risk and possibility that, subsequent to the execution of this Court Enforceable Settlement Agreement and Order, any or all of them will incur, suffer, or experience some further loss or damage with respect to the lawsuit that is unknown or unanticipated at the time this Court Enforceable Settlement Agreement and Order is signed. Except for all obligations required in this Court Enforceable Settlement Agreement and Order, the Signing Parties intend that this Court Enforceable Settlement Agreement and Order apply to all such further loss with respect to the lawsuit, except those caused by the Signing Parties subsequent to the execution of this Court Enforceable Settlement Agreement and Order. Therefore, except for all obligations required in this Court Enforceable Settlement Agreement and Order, this Court Enforceable Settlement Agreement and Order shall apply to and cover any and all claims, demands, actions, and causes of action by the Signing Parties to this Court Enforceable Settlement Agreement with respect to the lawsuit, whether the same are known, unknown, or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

11.    Except for all obligations required in this Court Enforceable Settlement Agreement and Order each of the Signing Parties to this Court Enforceable Settlement Agreement and Order, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners, and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and

representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, of any nature whatsoever.

**TERM OF THE COURT ENFORCEABLE SETTLEMENT AGREEMENT AND ORDER:**

12. This Court Enforceable Settlement Agreement and Order shall be in full force and effect for a period of six (6) months after the date of entry of this Court Enforceable Settlement Agreement and Order by the Court.

**SEVERABILITY:**

13. If any term of this Court Enforceable Settlement Agreement and Order is determined by any court to be unenforceable, the other terms of this Court Enforceable Settlement Agreement and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND SIGNING PARTIES:**

14. Signatories on the behalf of the Signing Parties represent that they are authorized to bind the Signing Parties to this Court Enforceable Settlement Agreement and Order. This Court Enforceable Settlement Agreement and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

**END OF PAGE.**
**SIGNATURES CONTINUE ON THE NEXT PAGE AND ORDER IS AT THE END OF THE DOCUMENT.**

1  Dated: November 22, 2022          PLAINTIFF JOSEPH McEVOY

2

3                                                         _____
                                                           JOSEPH McEVOY
4

5  Dated: Nov 22, 2022, 2022         DEFENDANT ANGELO PRONGOS dba
                                                          MAYFLOWER MARKET
6

7                                                         *angelo prongos*
                                                           angelo prongos (Nov 22, 2022 09:19 PST)
8                                                         _____
                                                           ANGELOS PRONGOS
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **ORDER**

2     Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

3 Dated: _Nov. 30, 2022

4                                   Honorable Donna M. Ryu

5                                   U.S. Magistrate Judge



*Joseph McEvoy v. Angelo Prongos dba Mayflower Market*
**United States District Court, Northern District of California**
**Case No. 4:22-cv-02228-DMR**

I.   **PURPOSE:**

   A.   To comply with requirements of the Americans with Disabilities Act (ADA), the Disabled Persons Act, the U.S. Department of Justice's revised final regulations implementing the ADA, the Unruh Civil Rights Act, and other laws and regulations related to persons with disabilities.

   B.   To ensure that **service animals** accompany patrons with disabilities in all areas of the Mayflower, located at 2498 Fillmore Street, San Francisco, California, where public access is normally allowed.

   C.   To provide guidelines for staff of the Mayflower Market to identify service animals when they encounter a **dog** in the course of their employment.

II.   **POLICY:**

   A.   It is the policy of Mayflower Market that persons with disabilities will not be discriminated against and that they will have full and equal access, services and treatment.

   B.   All patrons accompanied by a dog that is individually trained to do work or perform tasks for a disabled person must be permitted to enter all areas of the Mayflower Market open to the general public.

   C.   Mayflower Market staff shall use *minimal inquiry* when the work, service or tasks performed by the dog are not obvious and apparent.

III.   **DEFINITIONS:**

   A.   **Individual with a Disability** — A person who:

   1. Has a physical or mental impairment that substantially limits one or more major life activities;

   2. Has a record of such an impairment; or

   3. Is perceived by others as having such an impairment

   B.   **Service Animal** — Only dogs that are individually *trained to do work or perform tasks* for people with disabilities qualify as service animals. Service animals *recognize and respond* to needs.

   1. Examples include, but are not limited to:

   a. Guiding vision impaired
   b. Alerting hearing impaired
   c. Pulling wheelchair

      d. Retrieving items
      e. Stability and ambulation
      f. Alerting or protecting person having seizure
      g. Reminding person to take medication
      h. Calming person with Post-Traumatic Stress Disorder during an anxiety attack
      i. Preventing or interrupting impulsive or destructive behavior
      j. Removing disoriented individuals from dangerous situations

C. **Comfort / Emotional Support Dogs**

  1. **Federal Law (ADA) -** Dogs that solely provide companionship, comfort, and emotional support are *not service animals under the ADA*.

      a. Companionship, comfort and emotional support do not constitute work or tasks

  2. **California law —** Under the Unruh Civil Rights Act, the Department of Fair Employment and Housing *may* investigate denials of accommodation for access to public entities regarding comfort/emotional support dogs.

      a. Denying accommodation of a **comfort/emotional support** dog in a public entity *may* result in a complaint to the Department of Fair Housing and Employment for violation of the Unruh Civil Rights Act.

D. **Direct Threat -** A significant risk of substantial harm to the health or safety of others that cannot be eliminated or mitigated by a reasonable modification of practices or procedures or the provision of auxiliary aids or services.

  1. Mayflower Market staff must complete an **individualized assessment** when determining whether the service animal poses a direct threat based upon:

      a. Reasonable judgment that relies on current medical knowledge or on the best available objective evidence;
      b. The nature, duration, and severity of the risk;
      c. Probability that the potential injury will actually occur; and
      d. Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk.

E. **Fundamental Alteration —** A change that is so significant that it alters the nature of the facility or service offered.

DocuSign Envelope ID: CEB58005-4315-47E1-9BBA-B383DB8FAC85
Case 4:22-cv-02228-DMR   Document 22   Filed 11/30/22   Page 11 of 14

*Joseph McEvoy v. Angelo Prongos dba Mayflower Market*
**United States District Court, Northern District of California**
**Case No. 4:22-cv-02228-DMR**

IV. **PROCEDURE:**

   A. **Permitting Service Animals** - Service animals shall be permitted in all areas of the Mayflower Market that are open to the public, provided the service animal does not:

      1. Pose a direct threat; or

      2. Fundamentally alter the Mayflower Market's operations, policies, practices or procedures.

   B. **Excluding / Removing Service Animals -** Any decision to exclude service animals from the Mayflower Market shall be made only after an *individualized assessment* that the animal poses a direct threat to the health or safety of others which cannot be mitigated by modifications of policies or procedures or the provision of auxiliary aids or services.

      1. The individualized assessment of direct threat shall be conducted by the manager or the most senior employee on duty at the time at the Mayflower Market.

      2. The individualized assessment of direct threat must be based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain:

         a. The nature, duration, and severity of the risk;

         b. The probability that the potential injury will actually occur; and

         c. Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk

   C. **Staff Inquiry -** When it is not obvious or apparent what service, task or work the dog performs, staff may ask two questions ***only***:

      1. Is the dog a service animal required because of a disability? and

      2. What work or task has the dog been trained to perform?

         a. Under the ADA, staff must rely upon the patron's word that the dog is a service animal and the description of the service, task or work it performs.

         b. Staff must utilize the chain of command if there is concern that the service animal poses a direct threat or

DocuSign Envelope ID: CEB58005-4315-47E1-9BBA-B383DB8FAC85
Case 4:22-cv-02228-DMR   Document 22   Filed 11/30/22   Page 12 of 14

*Joseph McEvoy v. Angelo Prongos dba Mayflower Market*
**United States District Court, Northern District of California**
**Case No. 4:22-cv-02228-DMR**

       would fundamentally alter the Mayflower Market and services provided;

D. **Staff must not**:

1. Ask about the nature or extent of the person's disability;

2. Require documentation to support service animal status (e.g., ID card, proof of certification and training);

3. Ask dog to demonstrate ability to perform service, task or work;

4. Refuse access based upon allergies and fear of dogs;

5. Treat patrons with service animals less favorably;

6. Pet the service animal (may distract from assigned tasks);

7. Feed, clean, toilet or care for the service animal;

8. Ask patron to remove service animal from premises, ***unless*** an individualized assessment of direct threat has been completed *(See* Sections B, C, G).

E. **Requirements for Service Animals** — Service animals must be under the handler's control at all times via at least one of the following:

1. Harness

2. Leash

3. Tether

4. Voice control

5. Motion / signal control

6. Other effective controls

7. **Exception** — The devices listed above need not be used if they:

    a. Interfere with the service animal's work; or
    b. Person's disability prevents using these devices

Case 4:22-cv-02228-DMR   Document 22   Filed 11/30/22   Page 13 of 14

*Joseph McEvoy v. Angelo Prongos dba Mayflower Market*
United States District Court, Northern District of California
Case No. 4:22-cv-02228-DMR

F. **Legitimate Reasons for Removing the Service Animal**

1. The dog poses a direct threat to the health or safety of patrons and/or staff that cannot be eliminated by a reasonable modification the Mayflower Market's policies, practices, or procedures or the provision of auxiliary services;

2. The dog fundamentally alters the nature of alter the nature of the goods, services, facilities, privileges, advantages, or accommodations the Mayflower Market provides to the public;

3. The dog is out of control and handler does not take effective action to control it;

    a. Disruption (barking, running, jumping);
    b. Aggressive behavior (biting, lunging);

4. The dog is not housebroken

5. The dog has poor hygiene

6. The dog is ill.

G. **Miniature Horses (MH)**

1. Under the ADA, a miniature horse must be accommodated as a service animal where reasonable and if *individually trained to do work or perform tasks* for people with disabilities.

2. The Mayflower Market manager or the most senior employee on duty at the time at the Mayflower Market must complete an *individualized assessment* to determine whether s can be accommodated. The four (4) assessment factors are:

    a. Whether the MH is housebroken;
    b. Whether the MH is under the owner or handler's control;
    c. Whether the facility can accommodate the 's type, size and weight; and
    d. Whether the MH's presence will not compromise legitimate safety requirements necessary for safe operations.

V. **COMPLIANCE**

A. Newly hired members of the workforce at the Mayflower Market shall be given a copy of this policy and trained on its implementation.

*Joseph McEvoy v. Angelo Prongos dba Mayflower Market*
**United States District Court, Northern District of California**
**Case No. 4:22-cv-02228-DMR**

    B.    All workforce members at the Mayflower Market are responsible for ensuring that individuals comply with this policy;

    C.    Violations of this policy will be reported to the Mayflower Market's Manager. Violations will be investigated to determine the nature, extent, and potential risk to the Mayflower Market. Workforce members who violate this policy will be subject to the appropriate disciplinary action up to and including termination.